# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

FULTON B. LISS,

    Plaintiff,

v.

    Case No. 3:19-cv-185-J-32JBT

JACKSONVILLE AVIATION
AUTHORITY, etc., et al.,

    Defendants.

## **O R D E R**

According to his complaint, plaintiff Fulton B. Liss was a passenger on a commercial flight from Washington, D.C., to West Palm Beach, Florida, which was diverted to the Jacksonville International Airport on March 8, 2014. Liss alleges he has medical conditions that affect his balance, and he had boarded the plane using a wheelchair. When Liss exited the plane onto the jetway in Jacksonville, airport police Corporal D.L. McCrory told him he was being detained for questioning. Liss alleges that he told McCrory that he required a wheelchair and could not walk down the jetway unassisted. According to Liss, he was then handcuffed, put in a wheelchair, and arrested for failing to comply with McCrory's verbal commands and for "refusing to walk on his own accord." Doc. 8 at ¶ 19. Liss alleges McCrory called for medical assistance to treat Liss,

who was subsequently transported to a Pretrial Detention Facility by Officer P.A. Spikes with the Jacksonville Sheriff's Office ("JSO"), who also participated in the arrest.[1] Upon being booked into the Pretrial Detention Facility, Liss alleges that he was assaulted, bruised, and denied access to adequate medical care. Liss was charged with resisting or opposing an officer without violence, but the charges were later dropped.

Liss filed a three count complaint in state court seeking monetary and injunctive relief, naming as defendants the Jacksonville Aviation Authority ("JAA") (which operates Jacksonville International Airport), the City of Jacksonville, Sheriff Mike Williams, McCrory, Spikes, unknown supervisory officers and correctional officers with JSO, and an unknown medical provider at the Pretrial Detention Facility.[2] They are variously named in 42 U.S.C. § 1983 claims alleging Liss was arrested without probable cause (Count I); that

---

[1] Officer Spikes' motion to dismiss states that he (like Corporal McCrory) is with the Jacksonville Aviation Authority Police Department. See Doc. 6 at 2; see also Doc. 12 at 4, n.2 (statement by the City that Spikes is a JAA employee).

[2] The Court sua sponte dismisses the unnamed parties (some of whom are not named in any count), but Liss may amend his allegations against those defendants if he is able to provide a sufficient description. See Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010) (affirming dismissal of claim against John Doe guard at Charlotte Correctional Facility because fictitious party practice is generally not permitted in federal court and description was insufficient to identify the defendant from among the many guards at that facility).

he was denied adequate medical treatment (Count II); and that he was maliciously prosecuted (Count III). With the consent of the other served defendants, JAA removed the case to federal court on the basis of federal question jurisdiction, and all named defendants have moved to dismiss for failure to state a claim. Docs. 4, 5, 6, 12. Liss responded in opposition (Docs. 15, 24), requesting an opportunity to replead any count the Court finds is due to be dismissed. See Doc. 15 at 4, nn. 2 & 3; Doc. 24 at 4.

## I.  Standard of Review

When considering a motion to dismiss for failure to state a claim, the Court must accept all factual allegations as true and construe them in the light most favorable to plaintiff. Burban v. City of Neptune Beach, 920 F.3d 1274, 1278 (11th Cir. 2019) (citations omitted); Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quotation and citation omitted). But allegations are not entitled to the assumption of truth when they are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Id. (citation omitted).

## II. JAA's Motion to Dismiss

### A. Eleventh Amendment Immunity

JAA (which is named in Count I only) first argues that as an independent agency of the state of Florida, it enjoys Eleventh Amendment immunity from suit for money damages.³ Liss does not contest that JAA is an agency of the state of Florida (indeed, he alleges it is), but responds that JAA waived its Eleventh Amendment immunity by removing the case to federal court.⁴

---

³In an unpublished opinion, the Eleventh Circuit has noted that while Eleventh Amendment immunity is not jurisdictional, it "is in the nature of a jurisdictional bar" and may be addressed as a lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Keeler v. Fla. Dep't of Health, Div. of Disability Determinations, 397 F. App'x 579, 581-83 (11th Cir. 2010); see also Nat'l Ass'n of Bds. of Pharm. v. Bd. of Regents of the Univ. Sys. of Ga., 633 F.3d 1297, 1304 (11th Cir. 2011) (reviewing dismissal of claims on grounds of Eleventh Amendment immunity under Rule 12(b)(1)). But see Jallali v. Florida, 404 F. App'x 455, 456 (11th Cir. 2010) (affirming 12(b)(6) dismissal of state and state court on Eleventh Amendment immunity grounds); McClendon v. Ga. Dep't of Comm. Health, 261 F.3d 1252, 1259 (11th Cir. 2001) (affirming 12(b)(6) dismissal of state agency on Eleventh Amendment immunity grounds). For purposes of this order, it does not make a difference whether the Eleventh Amendment immunity issue is reviewed under the Rule 12(b)(1) or 12(b)(6) standard.

⁴Because Liss has himself alleged that JAA is an agency of the state of Florida (see Doc. 8 at ¶ 5), and has not otherwise challenged that it is through his response in opposition to JAA's motion, the Court is not called upon to make an independent finding that JAA is an "arm of the state" for purposes of Eleventh Amendment immunity. Thus, while recognizing that the current record contains insufficient information to make that finding independently, for purposes of this motion, the Court assumes that JAA is an arm of the state. Cf. McAdams v. Jefferson Cty. 911 Emerg. Comms. Dist., Inc., __ F.3d __, 2019 WL 3311223 (11th Cir. July 24, 2019) (discussing four factor test for finding an agency to be an arm of the state, and reversing grant of Eleventh Amendment immunity where balance of factors weighed against that finding). Notably,

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ." U.S. Const. amend. XI. As interpreted, this immunity extends to suits by a state's own citizens too. Lapides v. Bd. of Regents of Univ. Sys. of Ga., 535 U.S. 613, 618 (2002) (citation omitted). A defendant waives its Eleventh Amendment immunity from suit in federal court when it voluntarily avails itself of the federal forum by removal. Id. at 619. However, "the Eleventh Amendment is neither a source of nor a limitation on states' sovereign immunity from suit." Stroud v. McIntosh, 722 F.3d 1294, 1298 (11th Cir. 2013) (citation omitted). Thus, even if a state waives its Eleventh Amendment immunity from suit through removal, it may retain its sovereign immunity from liability for particular claims, provided Congress has not abrogated it or the state has not otherwise waived it. See id. at 1301-03 (finding Congress had not abrogated Alabama's sovereign immunity against ADEA claims, and Alabama had not waived it through other means); Page v. Hicks, No. 2:16-CV-01993-KOB, 2018 WL 828770, *5 (S.D. Ala. Feb. 12, 2018) (reviewing Alabama law to

---

however, JAA's Charter identifies it as "an agency and political subdivision of the State of Florida" and the Governor appoints the majority of its governing members, who serve at his pleasure. Laws of Fla., Ch. 2005-328. Thus, based on the charter alone, two of the four factors, including "the most important one," would weigh in favor of finding that JAA is an arm of the state. See McAdams, 2019 WL 3311223, at *2 (citation omitted)).

5

"determine whether some other form of immunity" would bar plaintiff's claim, where defendant's removal waived Eleventh Amendment immunity from the federal forum), aff'd, __ F. App'x __, 2019 WL 2070437 (11th Cir. May 10, 2019).

JAA contends that Congress has not abrogated and Florida has not waived Florida's sovereign immunity for § 1983 claims, such as those alleged in Liss's complaint. The Court agrees. See Gamble v. Florida Dep't of Health & Rehab. Servs., 779 F.2d 1509, 1512-20 (11th Cir. 1986) (holding that Congress did not abrogate and Florida did not waive sovereign immunity for § 1983 claims). JAA therefore enjoys sovereign immunity from liability for money damages on Liss's § 1983 claim.[5]

**B. Injunctive Relief**

JAA also seeks dismissal of Liss's request for injunctive relief.[6] Liss seeks an injunction "requiring all defendants to correct all past violations of

---

[5] Perhaps in an effort to circumvent the sovereign immunity bar, Liss argues that "[t]here are supplemental state claims . . . addressing [JAA's] training and supervision of their officers. The Court can address those claims as part of the supplemental jurisdiction statute." Doc. 15 at 2, ¶ 2. Liss's complaint, however, contains three counts, all brought under § 1983, and JAA is named in only one—alleging that it has a custom and policy of failing to discipline, train, supervise, and monitor its employees, resulting in the decision to arrest Liss without probable cause in violation of the First, Fourth, and Fourteenth Amendments of the United States Constitution. There are no separate state law claims in Liss's complaint.

[6] JAA "concedes" the Eleventh Amendment does not provide it with immunity from claims for prospective injunctive relief; however, the cases upon which it relies for making that concession stand for the proposition that state officials are not immune. See Doc. 4 at pp. 13-14 (citing cases). Cf. Puerto

federal and state law as well as [sic] alleged herein and to enjoin defendants from continuing to act in violation of federal and state law as alleged herein pursuant to Estelle v. Gamble[.]"  Doc. 8 at 13 (Wherefore Clause, at ¶ B).

First, it is unclear how the equitable remedy of an injunction could be fashioned in a manner to "requir[e] defendants to correct all past violations of federal and state law."  Id. (emphasis added).  Liss is pursuing legal remedies for damages, which is the appropriate means to seek redress for past violations.

Second, as to his request that defendants be enjoined from future violations, Liss must demonstrate that he has standing to seek injunctive relief by "alleg[ing], and ultimately prov[ing], a real and immediate—as opposed to merely conjectural or hypothetical—threat of future injury."  JW v. Birmingham Bd. of Educ., 904 F.3d 1248, 1264 (11th Cir. 2018); see also City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983) (holding that an injunction "is unavailable" absent a "showing of any real or immediate threat that the plaintiff will be wronged again").  Here, however, Liss has alleged only that he was on a plane that was diverted from its flight plan to Jacksonville

---

Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993) (explaining that in contrast to state officials, states and their agencies retain their Eleventh Amendment immunity from claims for prospective relief); Page, 2019 WL 2070437, *2 (affirming dismissal where state agency retained immunity against claim for prospective injunctive relief, notwithstanding its removal of the case from state court).  Nonetheless, for purposes of this order, the Court must view JAA's concession as a waiver of Eleventh Amendment immunity as to Liss's claim for prospective injunctive relief.

International Airport, whereupon his allegedly unconstitutional encounter with law enforcement occurred. In his brief, Liss adds that he "flies to the State of Florida each year and his travel is not limited to West Palm Beach, Florida and there remains a 'real and immediate threat' of future arrest or malicious prosecution in Jacksonville during his travel."[7] Doc. 15 at 3. Other than the March 8, 2014 incident, Liss does not allege or state that he has had any previous law enforcement encounters at Jacksonville International Airport or that he had ever even been there before March 8, 2014. Nor does he allege that he intends to travel through that airport in the future. And even if Liss regularly traveled through Jacksonville International Airport, he would have to further allege reasons why he expects to have encounters with law enforcement, and why those encounters would result in future arrests without probable cause. Liss has done none of that. As a matter the law, Liss's speculation about future encounters is insufficient to secure an injunction. See Lyons, 461 U.S. at 111 (holding that plaintiff could pursue damages for his claim of injuries from past encounter with police, but had no standing to seek an injunction "[a]bsent a sufficient likelihood that he [would] again be wronged in a similar way"); Corbett, 2019 WL 3244082, at *7-8 (finding plaintiff did not

---

[7] For purposes of standing, the Court may consider materials outside the four corners of the complaint. Corbett v. Transp. Secur. Admin., ___ F.3d ___, 2019 WL 3244082, *1, *7 (11th Cir. July 19, 2019) (citation omitted) (stating that court may consider facts elsewhere in the record for standing analysis).

8

have standing to seek injunctive relief where he could only hypothesize that as a frequent flier, he "might" be selected by TSA in the future for additional (allegedly unconstitutional) screening); Worthy v. City of Phenix City, __ F.3d __, 2019 WL 3226873, *4 (11th Cir. July 18, 2019) (explaining that although plaintiffs had standing to pursue damages claims related to red-light camera ordinance, they did not have standing for purposes of injunctive relief where they failed to sufficiently allege a substantial likelihood that they would receive a future red-light camera citation); Elend v. Basham, 471 F.3d 1199, 1209 (11th Cir. 2006) (affirming dismissal of claim for injunctive relief that was based on an "entirely conjectural" premise).

Finally, the requested prospective injunction seeks to require that defendants be enjoined from "continuing to act in violation of federal and state law as alleged herein pursuant to Estelle v. Gamble[.]"[8]  Doc. 8 at 13.  But that language does no more than direct defendants to "obey the law," which fails to meet the requirements of Federal Rule of Civil Procedure Rule 65(d) and is incapable of enforcement.  Burton v. City of Belle Glade, 178 F.3d 1175, 1200-01 (11th Cir. 1999) (affirming summary judgment in favor of city where

---

[8] 429 U.S. 97 (1976).  Elsewhere in his complaint, Liss references Estelle for the proposition that an Eighth Amendment claim for inadequate medical care is stated when municipal actors are alleged to have been deliberately indifferent to a plaintiff's serious medical needs, including through failure to supervise medical staff.  See Doc. 8 at ¶¶ 1 n.2, 8, 11, 12, 36 n.7.

9

proposed injunction ordering city not to discriminate in future annexation decisions violated Rule 65(d)'s proscription against entering injunctions that are so broad that they are incapable of enforcement); see also Elend, 471 F.3d at 1209 (holding plaintiffs' claim impermissibly requested injunctive relief that did no more than "abstractly command[ ] the Secret Service to obey the First Amendment"). Injunctive relief is not available to Liss on the claims stated here.[9]

JAA's motion to dismiss is due to be granted.

### III. The City and Sheriff Mike Williams's Motion to Dismiss

The City (which is named in Counts I and II) and the Sheriff (who is sued in his official capacity and named in Count II only) move to dismiss on the grounds that Liss's complaint is a shot-gun pleading in that he incorporates several potential claims into the same count; that he has failed to sufficiently allege that any custom or policy was the cause of his alleged deprivation as is necessary to state a § 1983 claim against a municipality; and that he fails to demonstrate entitlement to injunctive relief (Doc. 12). Because the Sheriff is sued in his official capacity, the claim against him is treated as a claim against

---

[9] The ruling that Liss cannot state a claim for injunctive relief also applies to the motions of the other defendants, all of whom have moved to dismiss the request for injunctive relief for the same reasons as JAA.

10

the City, the government entity he represents. See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985).

**A. Count I**

The Court agrees that Liss has impermissibly incorporated several potential claims into this count. Count I includes claims that the City (and JAA, which is being dismissed) failed to discipline, train, supervise, monitor and control their employees, resulting in officers arresting Liss without probable cause and initiating a prosecution against him; that they failed to discipline officers for failing to provide necessary medical care; and that they ratified officers' decisions. The incorporated paragraphs include allegations about the actions of McCrory and Spikes at the airport, physical abuse Liss suffered at the Pretrial Detention Facility, and unnamed correctional officers and guards who denied Liss necessary medical care at the Pretrial Detention Facility (the latter of which seems repetitive of Count II).

By combining multiple theories and allegations regarding disparate conduct by disparate actors, Count I fails to give the City "adequate notice of the claims against [it] and the grounds upon which each claim rests." Weiland v. Palm Beach City Sheriff's Office, 792 F.3d 1313, 1323 (11th Cir. 2015) (explaining that one type of shotgun pleading "commits the sin of not separating into a different count each cause of action or claim for relief"); see also Cesnik v. Edgewood Baptist Church, 88 F.3d 902, 905 (11th Cir. 1996) (reaffirming "the

principle that separate, discrete causes of action should be plead in separate counts") (citation omitted). Liss will need to file an amended complaint to separate his legal theories.

The Court also notes that many of the allegations in Count I relate to the alleged conduct of Corporal McCrory (who is alleged to be an employee of JAA, which will no longer be a party) as well as Officer Spikes who, while alleged by Liss to be an employee of JSO, is, according to the City, an employee of JAA, not JSO. Liss should therefore determine whether he has a good faith basis to name the City as a defendant in Count I at all.

In the event that he does, Liss will further be required to replead his allegations regarding municipal liability. As currently pled, those allegations rest on a single incident, which is insufficient to support a claim that a custom or practice is so pervasive as to become policy that can hold a municipality liable.[10] See, e.g., Craig v. Floyd Cnty., 643 F.3d 1306, 1310 (11th Cir. 2011) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability against a municipality") (quotation and citation omitted);

---

[10] Like many § 1983 complaints attempting to allege municipal liability, Liss does not contend that the City has an official policy that endorses constitutional violations; rather, he attempts to allege that it has a custom or practice of permitting constitutional violations and that the custom or practice was the moving force behind those violations. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); Grech v. Clayton Cnty., Ga., 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc).

Liss argues that his claim as pled is sufficient and that further discovery will reveal whatever support is needed. That may be true in some cases, but here the complaint contains too little substance about any custom or practice to permit the inference that the City might be liable. See, e.g., Stepanovich v. City of Naples, 728 F. App'x 891, 897 (11th Cir. 2018) (affirming dismissal of City where allegations against it were "highly generalized, amounting to little more than a bald assertion that the City's Chief of Police was aware of general problem with its booking system"); Marantes v. Miami-Dade Cnty., 649 F. App'x 665, 673 (11th Cir. 2016) (affirming dismissal of county where plaintiff's complaint cited only two incidents of allegedly excessive force involving the same officers). To hold otherwise would be to allow the City to be named as a party whenever one of its employees is alleged to have committed a constitutional violation, in direct contravention of the doctrine that municipalities may not be held under a theory of respondeat superior. See Grech, 335 F.3d at 1329 ("A [municipality]'s liability under § 1983 may not be based on the doctrine of respondeat superior.") (citation omitted). Instead, a municipality "is liable under section 1983 only for acts for which [the municipality] is actually responsible." Id. (quotation and citation omitted). The City's motion to dismiss Count I is due to be granted without prejudice to repleading.

**B. Count II**

In Count II, Liss alleges that the City, Sheriff Williams, and unknown correctional officers acted with deliberate indifference in denying or delaying his medical treatment, in violation of the Eighth and Fourteenth Amendments, causing him injury. Because Liss names the City and Sheriff, here, too, he must allege what municipal custom or practice caused the alleged violation of Liss's constitutional rights. As pled, this count says nothing about that at all. Count II is due to be dismissed without prejudice to repleading.

**IV. Corporal D.L. McCrory's and Officer P.A. Spikes' Motions to Dismiss**

McCrory and Spikes are named as defendants in Count III, Liss's § 1983 malicious prosecution claim. Both move to dismiss on the Rule 12(b)(6) grounds that this claim fails to allege that either of them were involved in the prosecutorial decision underlying the allegedly malicious prosecution and move to dismiss the request for injunctive relief. Docs. 5 & 6. To state a malicious prosecution claim under § 1983, Liss must allege a violation of his right to be free from an unreasonable seizure as well as the elements of the common law tort of malicious prosecution. <u>Wood v. Kesler</u>, 323 F.3d 872, 881 (11th Cir. 2003). Under Florida law, the common law elements of malicious prosecution include that "the present defendant was the legal cause of the original proceeding" and that there was "malice on the part of the defendant." <u>Alamo</u>

Rent-A-Car, Inc. v. Mancusi, 632 So. 2d 1352, 1355 (Fla. 1994).[11] Where, as here, an arrest is alleged to have been made without probable cause, "the intervening acts of the prosecutor" and, where applicable, "the grand jury, judge, and jury," "break the chain of causation unless [the] plaintiff can show that these intervening acts were the result of deception or undue pressure by the defendant [law enforcement officers]." Williams v. Miami-Dade Police Dep't, 297 F. App'x 941, 947 (11th Cir. 2008). Thus, where there are no allegations that law enforcement officers "had anything to do with the decision to prosecute or that they had improperly influenced that decision," the officers are not the "legal cause" of the original proceeding. Id. (citing Eubanks v. Gerwen, 40 F.3d 1157, 1160-61 (11th Cir. 1994)); see also Eubanks, 40 F.3d at 1161 (holding arresting officers could not be liable for § 1983 malicious prosecution claim where they "turn[ed] over all relevant information about the matter to the State Attorney," "did not make the decision as to whether or not to prosecute," and "none of them improperly influenced the decision to prosecute").

---

[11] Liss has satisfactorily pled the other elements by alleging that an original criminal proceeding was commenced against him, the proceeding was terminated in his favor, that there was an absence of probable cause, and that he suffered damage as a result. See Alamo, 632 So. 2d at 1355 (citations omitted).

Liss argues that because he alleges that McCrory and Spikes were part of the arrest and detention, this is sufficient. It is not. His complaint fails to state a claim of § 1983 malicious prosecution against McCrory or Spikes because he makes no allegations that they were involved in the decision to prosecute or that they misled or withheld information from the prosecutor, or that they did so with malice. Count III is due to be dismissed without prejudice to repleading.

## V. Conclusion

Accordingly, it is hereby

**ORDERED:**

1. Defendant JAA's Motion to Dismiss (Doc. 4) is **GRANTED**. Defendant Jacksonville Aviation Authority is dismissed with prejudice, and the Clerk shall terminate it as a party.

2. Liss's Request for Injunctive Relief is dismissed with prejudice.

3. The Motions to Dismiss filed by the City of Jacksonville & Sheriff Mike Williams (Doc. 12), D.L. McCrory (Doc. 5), and P.A. Spikes (Doc. 6) are **GRANTED**, but Liss is granted leave to amend his claims against these defendants.

4. No later than **August 30, 2019** Liss may file an amended complaint. Defendants shall respond no later than **September 20, 2019**. If any defendant files a motion to dismiss, Liss shall respond no later than

16

**October 11, 2019**.  In all other respects, the parties shall continue to abide by the deadlines and terms of their Case Management and Scheduling Order (Doc. 22).

**DONE AND ORDERED** in Jacksonville, Florida the 7th day of August, 2019.

TIMOTHY J. CORRIGAN
United States District Judge

s.
Copies:
Counsel of record