# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

FULTON P. LISS, an individual

    Plaintiff,

v.                                                               Case No. 3:19-cv-185-J-32JBT

THE CITY OF JACKSONVILLE, a municipality and agency of the State of Florida, MIKE WILLIAMS, in his official capacity, BRENDA LUNA, ARPN, in her individual capacity, JACKSONVILLE CORRECTIONAL OFFICER(S) ASSIGNED TO BOOKING AND TO 6W-2A, and JACKSONVILLE SUPERVISORY CORRECTIONAL OFFICERS ASSIGNED TO BOOKING AND TO 6W-2A,

    Defendants.

---

# **O R D E R**

In this civil rights excessive force case, the Court must determine whether the Amended Complaint sufficiently alleges an unlawful policy or custom to hold the City or Sheriff liable. This case is before the Court on Defendants City of Jacksonville and Sheriff Mike Williams's Motion to Dismiss Amended Complaint with Prejudice. (Doc. 50). Plaintiff Fulton Liss responded in opposition. (Doc. 53).

## I. BACKGROUND

Liss alleges that he was flying from his home in Baltimore to West Palm Beach, Florida when his aircraft was diverted to Jacksonville. (Doc. 45 ¶¶ 16–17). Upon landing, Liss was informed by Corporal McCrory that Liss was being detained for questioning. Id. ¶ 17. Liss had a medical condition "which affected his ability to walk and balance" and gave him headaches, vertigo, and "chronic migraines that felt like his head would explode." Id. ¶ 19. Liss was then arrested and transported to the Jacksonville Pretrial Detention Facility. Id. ¶¶ 18, 22.

According to Liss, after arriving at the correctional facility, "[t]he correctional officer(s) assaulted him, dragged him across the floor, and caused bleeding on his hands and arms." Id. ¶ 25. Liss further alleges that he was screened by Jameson Walters and Brenda Luna, ARNP and placed in mental health classification on 6W-2A. Id. ¶ 28. Additionally, Liss alleges that he was prescribed pain medication by a physician, he was required to take these medications every three hours, he told correctional officers that he needed the medications, and the correctional officers "told him that he would not be getting [his medications]." Id. ¶¶ 30, 35–37.

The Court dismissed Liss's prior complaint for myriad reasons. (Doc. 31). First, it dismissed the claims against all unnamed parties because they were not sufficiently described. Id. at 2 n.2. Second, the Court dismissed the claims against the Jacksonville Aviation Authority ("JAA") based on Eleventh

2

Amendment sovereign immunity. Id. at 4–6. Next, the Court dismissed all requests for injunctive relief on the basis that injunctive relief cannot remedy past harms and Liss failed to demonstrate the likelihood of a future injury—i.e. he did not have standing for prospective relief. Id. at 7–10. The Court then found that Liss had improperly included multiple claims into Count I, warranting dismissal. Id. at 11. The Court also dismissed each of Liss's § 1983 claims against the City and Sheriff Williams (who was sued only in his official capacity) because Liss failed to allege a municipal policy or custom that caused the alleged constitutional violations. Id. at 12–14. Lastly, the Court dismissed the § 1983 malicious prosecution claim against Corporal McCrory and Officer Spikes, both JAA employees, for failing to state a claim. Id. at 15. Liss's claims against JAA and his requests for injunctive relief were dismissed with prejudice.[1] Id. at 16. The other claims against the City, Sheriff Williams,

---

[1] The Court notes it incorrectly dismissed Liss's requested injunctive relief with prejudice. Because the dismissal was based on a lack of Article III standing, the dismissal should have been without prejudice. See Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1232 (11th Cir. 2008) ("A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice."). The same is true of Liss's claim against JAA that was barred by the Eleventh Amendment. See Nichols v. Alabama State Bar, 815 F.3d 726, 733 (11th Cir. 2016) ("Given that the State Bar is an arm of the state entitled to Eleventh Amendment immunity, the district court properly dismissed [the plaintiff's] § 1983 action without prejudice for lack of subject matter jurisdiction.").

Although the Court will amend the dismissals to now be without prejudice, the effect is nonetheless the same. The Court intended that Liss be permitted to file an amended complaint asserting his § 1983 claims for money

3

Corporal McCrory, and Officer Spikes were dismissed without prejudice, and Liss was directed to file his amended complaint by August 30, 2019. Id.

Liss filed nothing by that date, and on September 24, 2019, the Court dismissed the case without prejudice. (Doc. 32). A month later, Liss filed a Motion to Set Aside Dismissal (Doc. 33), an Amended Motion to Set Aside Dismissal (Doc. 35), an Unopposed Motion for Nonjoinder of Parties (Doc. 36), an Ex Parte Motion to Set Aside Dismissal (Doc. 39), a Second Amended Motion to Set Aside Dismissal (Doc. 40), and a Third Amended Motion to Set Aside Dismissal (Doc. 41). Ruling on the motions, the Court stated:

> While the Court does not find plaintiff's neglect of the Court-ordered deadlines to be excusable (especially where he is represented by two separate lawyers from two separate law firms), and although counsel's efforts in this case so far have fallen below the minimum acceptable standards for practice in this Court, in light of the non-objection by what will be the only remaining defendants, the Court will reluctantly **grant** the motion (Doc. 41).

(Doc. 44 at 1–2). In so doing, the Court stated that "plaintiff shall file an amended complaint naming only the City of Jacksonville and Sheriff Mike Williams as defendants, **and which is in all respects in accordance with the Court's August 7, 2019 Order** (Doc. 31)." Id. Further, the Court identified specific deficiencies in Liss's proposed amended complaint, including, inter alia: it impermissibly included multiple legal claims in a single count; it still lacked

---

damages only and without JAA as a defendant. This is what Liss has done.

4

a specific description of the unnamed correctional and supervisory correctional officers; and it still sought injunctive relief. Id. at 2 n.2. Lastly, the Court warned that this would be Liss's "one and only opportunity to cure the defects" and that failure to comply would "result in the dismissal of this case without further notice." Id. at 2 n.2, 2–3.

Liss filed a four count Amended Complaint alleging a 42 U.S.C. § 1983 excessive force claim against Sheriff Williams (Count I), a § 1983 inadequate medical treatment claim against Sheriff Williams (Count II), a § 1983 inadequate medical treatment claim against Luna (Count III), and a Florida battery claim against the City, unnamed Jacksonville Correctional Officer(s) Assigned to Booking and to 6W-2A, and unnamed Jacksonville Supervisory Correctional Officer(s) Assigned to Booking and to 6W-2A (Count IV). (Doc. 45). The City and Sheriff Williams move to dismiss Counts I, II, and IV, the only claims against them. (Doc. 50). They argue that Counts I and II still fail to allege a policy or custom sufficient to hold a municipality liable, and that the battery claim is barred by the statute of limitations. Id.

**II. STANDARD OF REVIEW**

When considering a motion to dismiss for failure to state a claim, the Court must accept all factual allegations as true and construe them in the light most favorable to plaintiff. Burban v. City of Neptune Beach, 920 F.3d 1274, 1278 (11th Cir. 2019) (citations omitted); Fed. R. Civ. P. 12(b)(6). "To survive a

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quotation and citation omitted). But allegations are not entitled to the assumption of truth when they are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Id. (citation omitted). Further, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal [of a complaint]." Taylor v. Polhill, 964 F.3d 975, 981 (11th Cir. 2020) (quoting Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1185 (11th Cir. 2003)).

### III. DISCUSSION

#### A. Liss's Monell Claims

Liss asserts a § 1983 excessive force claim (Count I) and § 1983 inadequate medical treatment claim (Count II) against Sheriff Williams in his official capacity. Liss's prior complaint was dismissed, inter alia, for failing to allege a municipal policy or custom. (Doc. 31 at 12–13). Here, Sheriff Williams again argues that the claims should be dismissed because they fail to properly allege a municipal policy or custom and causation. (Doc. 50).

6

A sheriff sued in his official capacity is effectively an action against the governmental entity the sheriff represents, in this case the City of Jacksonville. Barnett v. MacArthur, 956 F.3d 1291, 1296 (11th Cir. 2020). "A municipality can be sued directly under § 1983 when one of its customs, practices, or policies causes a constitutional injury." Id. (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978) (holding that a municipality cannot be held vicariously liable under § 1983)); see also City of Canton v. Harris, 489 U.S. 378, 385 (1989). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, 563 U.S. 51, 61 (2011).

"A custom is an unwritten practice that is applied consistently enough to have the same effect as a policy with the force of law." Goebert v. Lee Cty., 510 F.3d 1312, 1332 (11th Cir. 2007). The alleged incident "must result from a demonstrated practice." McDowell v. Brown, 392 F.3d 1283, 1290 (11th Cir. 2004). "Normally, random acts or isolated incidents are insufficient to establish a custom or policy." Depew v. City of St. Marys, 787 F.2d 1496, 1499 (11th Cir. 1986). Instead, the alleged custom "requires showing a persistent and wide-spread practice." Goebert, 510 F.3d at 1332 (alteration adopted) (quotation and citation omitted).

### 1. Liss has not alleged a policy or custom of excessive force at the pretrial detention facility.

In his Amended Complaint, Liss added allegations of a statistical analysis of excessive force complaints in Jacksonville compared to a nationwide survey, and a list of fourteen alleged instances of excessive force by Jacksonville Sheriff's Office deputies. (Doc. 45 ¶ 46). Liss also alleges that Williams "had actual or constructive knowledge of the history of the excessive use of force by the Jacksonville Sheriff's Office, and despite having knowledge failed to discipline these officers . . . ." Id. The incident giving rise to Liss's claim is that while at the pretrial detention facility "[t]he correctional officer(s) assaulted him, dragged him across the floor, and caused bleeding on his hands and arms." Id. ¶ 25.

These allegations are still insufficient to state a municipal policy or custom of excessive force at the pretrial detention facility. First, the statistic provided by Liss—that only 9 out of 594 "force complaints lodged against the current patrol officers" were sustained—does not demonstrate a custom of excessive force at the pretrial detention facility. It is unclear when these 594 complaints occurred. Additionally, that only nine of the force complaints were sustained—a rate Liss alleges is much lower than the national average—does not show a custom of excessive force, and perhaps shows the opposite. Likely, Liss is attempting to argue that the City fails to discipline its officers on a

8

sufficient number of occasions compared to other locations, but this factual deduction is unwarranted. See Taylor, 964 F.3d at 981 ("[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal [of a complaint]." (quoting Davila, 326 F.3d at 1185)). Ultimately, these statistics are insufficient to show that Williams was on notice of a "practice[] so persistent and widespread as to practically have the force of law." Connick, 563 U.S. at 61; see also White v. Kelly, No. 3:18-cv-1175-J-20PDB, slip op. at 5–6 (M.D. Fla. Aug. 2, 2020) (dismissing Monell claim premised on the same statistics alleged here).

Second, Liss attempts to allege a custom by listing fourteen prior incidents allegedly involving excessive force. (Doc. 45 ¶ 46b). This Court has previously found that alleging a list of similar, prior incidents of excessive force is sufficient to allege a custom of excessive force at the motion to dismiss stage. See Blessing v. Williams, No. 3:19-CV-731-J-32MCR, 2020 WL 1065116, at *5 (M.D. Fla. Mar. 5, 2020) (relying on Mims v. Williams, No. 3:19-cv-260-J-20JRK (M.D. Fla. Jan. 29, 2020); Wilson v. Williams, No. 3:19-cv-822-J-34PDB, 2019 WL 6324265, at *4 (M.D. Fla. Nov. 26, 2019); Martinez v. Williams, No. 3:17-cv-1319-J-20MCR (M.D. Fla. Sept. 26, 2019)). However, Blessing, and the cases it relies upon, are distinguishable. In those cases, the plaintiffs alleged excessive force by JSO patrol officers during an arrest, and the list of prior excessive force incidents had "the common link [of] alleged use of excessive force

9

in arresting individuals who [we]re not resisting." Wilson, 2019 WL 6324265, at *4. Here, Liss alleges excessive force against him by correctional officers at the pretrial detention facility but lists incidents of alleged excessive force by patrol officers in apprehending suspects.[2] Because correctional officers and patrol officers are distinct categories with different powers and duties, an alleged custom of excessive force by one group does not equate to a custom of excessive force by the other. See § 943.10(1), Fla. Stat. (2019) (distinguishing "law enforcement officer" from "correctional officer"). Simply, that patrol officers are alleged to have a custom of using excessive force in effecting arrests does not put Sheriff Williams on notice that correctional officers have a custom of using excessive force at the pretrial detention facility. See McDowell, 392 F.3d at 1290 ("[T]he incident must result from a demonstrated practice.").

Thus, Liss has failed to sufficiently allege a municipal policy, custom, or practice for Count I and it is due to be dismissed.

---

[2] Excessive force claims in seizing an individual fall under the Fourth Amendment, whereas excessive force against detained individuals fall under the Eighth or Fourteenth Amendments. Hicks v. Moore, 422 F.3d 1246, 1254 n.7 (11th Cir. 2005). The exact point where a seizure ends and detention begins is unsettled in the Eleventh Circuit. Id.; see also Quinette v. Reed, 805 F. App'x 696, 701 (11th Cir. 2020) (stating that demarcation point from seizure to detention is still unsettled). Here, Liss alleges that his excessive force claim falls under both the Fourth and Fourteenth Amendments. (Doc. 45 ¶ 46). The Fourth Amendment standard is easier for a plaintiff to satisfy because it does not require deliberate indifference. Hicks, 422 F.3d at 1254 n.7. However, the Court need not determine which standard governs Liss's claim here; under either standard Liss fails to sufficiently allege a municipal policy.

## 2. Liss fails to allege a policy or custom of improper diagnosis and failure to provide medications.

The City argues that Count II likewise fails to allege a municipal custom or policy that caused Liss's alleged constitutional deprivation. (Doc. 50 at 1–13). Relying on a flurry of facts outside of the Amended Complaint, Liss responds that Sheriff Williams's "Keep on Person" drug policy at the detention facility resulted in Liss being unable to take his required medications, which, according to Liss, equates to deliberate indifference to a serious medical need. (Doc. 53 at 6–7). Ultimately, Liss appears to be arguing that Sheriff Williams's policy of not allowing detainees to keep opioid medications on their person at the jail is unconstitutional. Id. However, in making this argument Liss fails to direct the Court to where such facts are alleged in the Amended Complaint.[3]

Nonetheless, even if the Court considers this information, it is still unclear whether Liss is alleging that the policy is facially unconstitutional, that it was constitutional but was customarily not followed, or something else. Moreover, Liss has failed to demonstrate under any of these theories how Sheriff Williams would be on notice of the alleged constitutional infirmities of

---

[3] The only allegation referring to a "keep on person" policy refers to practices that detention facilities should implement: "Ordinarily, only health care staff should administer prescription drugs, except that health care staff should be permitted to authorize prisoners to hold and administer their own asthma inhalers, and to implement other reasonable "keep on person" drug policies." (Doc. 45 ¶ 34).

11

his policy. See Harris, 489 U.S. at 386 (explaining that an unconstitutional application of an otherwise valid policy, without more, is insufficient to hold a municipality liable); Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty., 402 F.3d 1092, 1116 (11th Cir. 2005) (stating there must be a causal link between the policy and the alleged deprivation of rights).

Additionally, Liss alleges "a sampling of cases involving the constitutional failure to provide timely adequate medical care in the pretrial detention facility." (Doc. 45 ¶ 59). The Amended Complaint lists eight individuals or cases, with ranging details, purportedly supporting his allegation that Sheriff Williams should have been on notice of a custom of inadequate medical treatment at the pretrial detention facility. Id.

This list of prior incidents is also insufficient to state a "practice[] so persistent and widespread as to practically have the force of law." Connick, 563 U.S. at 61. First, three of the purported instances contain no details whatsoever.[4] (Doc. 45 ¶¶ 59(2)-(3) (listing case names without any additional information)). Of the remaining five alleged incidents, only one includes any

---

[4] The Court notes that for two out of the three cases it cannot even look at the case records to see if they support Liss's claims. Paragraph 59(3) lists "Jones v. City of Jacksonville – No. 13-10619 (2013)" but the Court has no way of knowing what court this case occurred in. Paragraph 59(4) lists "Thomas v. City of Jacksonville – 12-cv-737-J-32MCR" but that case number does not exist and does not correspond with the name of the case (Case no. 3:12-cv-737-J-34JRK is styled "Crowley Puerto Rico Servs., Inc. v. CLP Transp., Inc.").

type of date, and that allegation only includes the year. Id. ¶ 59(1). Second, none the alleged prior incidents appear to be similar to Liss's situation. For example, one alleged prior incident states: "Melvin Brown – died in his cell after sustaining a head injury." Id. ¶ 59(6). It is unclear how this situation is like that experienced by Liss, or how it would put the Sheriff on notice of a custom of inadequate medical care. In sum, eight random incidents occurring over at least sixteen years and seemingly unrelated to Liss's situation, are insufficient to "show[] a persistent and wide-spread practice." Goebert, 510 F.3d at 1332 (alteration adopted) (quotation and citation omitted).

Accordingly, Count II is due to be dismissed.

### B. Additional Defendants

In his Third Amended Motion to Set Aside Dismissal, Plaintiff's counsel stated that in his amended complaint, "[t]he remaining defendants would be the COJ, the unknown correctional officers, supervisory officers and medical staff." (Doc. 41 at 8 n.10). However, in "reluctantly" allowing Liss to file an untimely amended complaint, the Court stated: "plaintiff shall file an amended complaint naming only the City of Jacksonville and Sheriff Mike Williams as defendants . . . ." (Doc. 44 at 2 (emphasis added)). The Court limited the Amended Complaint to those defendants because in his proposed amended complaint, Liss had still failed to sufficiently describe the unnamed defendants. (Doc. 4 at 2 n.2). Liss did not seek permission before filing his Amended

13

Complaint to name additional defendants. For this reason alone, the Court can dismiss the claims against all defendants other than the City and Sheriff Williams.

However, alternative reasons for dismissing those claims exist as well. Liss's original claims against the unnamed defendants were dismissed because Liss failed to provide a sufficient description. (Doc. 31 at 2 n.2 (citing Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010))). Here, Liss added one defendant by name, Brenda Luna ARNP, and for the unknown correctional officers merely added the unit in the jail to which they are assigned. (Doc. 45 ¶¶ 14–15). Since filing his Amended Complaint in December 2019, Liss has not served serve Luna. (Doc. 60).

"As a general matter, fictitious-party pleading is not permitted in federal court." Richardson, 598 F.3d at 738. However, there is "a limited exception to this rule when the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage.'" Id. (quoting Dean v. Barber, 951 F.2d 1210, 1215–16 (11th Cir. 1992)). In Richardson, the plaintiff identified a defendant as "John Doe (Unknown Legal Name), Guard, Charlotte Correctional Institute . . . ." Id. This description was insufficient. Id. Here, Liss's description of "Jacksonville Correctional Officer(s) Assigned to Booking and to 6W-2A" and "Jacksonville Supervisory Correctional Officers Assigned to Booking and to 6W-2A" are still insufficient. Because Liss has still failed to provide a detailed

description of the unknown correctional officers, the claims against them are due to be dismissed.

Although Liss was not permitted to bring claim against new parties, Liss sued Nurse Luna. But now, Liss has failed to timely serve her. See Fed. R. Civ. P. 4(m); Doc. 58; Doc. 60. In April 2020, Liss sought an extension to serve Luna by May 31, 2020. (Doc. 58). The Court gave more time that requested, extending the deadline until July 15, 2020. (Doc. 59). As of today, August 14, 2020, Luna still has not been served.[5] Liss has not moved for an additional extension of time and has not demonstrated good cause for an additional extension. See Brown v. Davis, 656 F. App'x 920, 921 (11th Cir. 2016) (affirming dismissal for lack of service where defendant no longer resided at address provided by plaintiff, plaintiff did not remedy the ineffective service, plaintiff did not seek an extension of time, and plaintiff had been on notice for three years that the defendant had not been served).

Moreover, a perusal of the allegations against Luna reveal they are unlikely to satisfy the deliberate indifference standard. See Dang ex rel. Dang v. Sheriff, Seminole Cty., 871 F.3d 1272, 1279 (11th Cir. 2017) ("To prevail on [a] § 1983 claim for inadequate medical treatment, [the plaintiff] must show (1) a serious medical need; (2) the health care providers' deliberate indifference to

---

[5] On July 15, 2020, Liss filed a notice saying that he had finally attempted service on Luna but was told she has been overseas for two years. (Doc. 60).

15

that need; and (3) causation between the health care providers' indifference and [the plaintiff's] injury."); see also id. ("To establish deliberate indifference, [the plaintiff] must prove (1) subjective knowledge of a risk of serious harm; and (2) disregard of that risk (3) by conduct that is more than mere negligence."); Fed. R. Civ. P. 4(m).

For all of these reasons, Liss's claim against Luna is due to be dismissed.

**C. Liss's Battery Claim**

The City argues that Count IV, alleging battery under Florida law, should be dismissed as untimely because Liss was not permitted to assert new claims in his amended complaint and that the battery claim does not relate back to the original complaint.

However, the Court need not analyze whether the claim relates back to the original complaint under Federal Rule of Civil Procedure 15(c). As no federal claims remain, the Court declines to retain supplemental jurisdiction of the state law claim and will remand it back to state court. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . point toward declining to exercise jurisdiction over the remaining state-law claims.").

Accordingly, it is hereby

**ORDERED:**

16

1. Defendants City of Jacksonville and Sheriff Mike Williams's Motion to Dismiss (Doc. 50) is **GRANTED in part**.

    a. Count I is **DISMISSED with prejudice** for failure to state a claim.

    b. Count II is **DISMISSED with prejudice** for failure to state a claim.

    c. The Court declines to rule on the motion to dismiss Count IV, the state law battery claim.

2. Count III against Brenda Luna is **DISMISSED without prejudice** for the reasons set forth in this Order.

3. The Court's August 7, 2019 Order (Doc. 31) is amended such that the dismissal of the claims against JAA and the prayers for injunctive relief are without prejudice.

4. This case is **REMANDED** back to the Fourth Judicial Circuit, in and for Duval County.

5. After effecting remand, the Clerk shall close the file.

    **DONE AND ORDERED** in Jacksonville, Florida this 14th day of August, 2020.

*[signature: Timothy J. Corrigan]*

TIMOTHY J. CORRIGAN
United States District Judge

jjb
Copies to:
Counsel of record